In re: Condemnation By the Commonwealth of Pennsylvania, Department of Transportation, of Right-of-Way for Legislative Route 1005-2, In Susquehanna Township at Front and Estherton Streets.

Edwin B. Hershey, Executor of the Estate of Mary E. Hershey *v.* Exxon Corporation, Lessee, *v.* Commonwealth of Pennsylvania, Department of Transportation. Exxon Corporation, Lessee, Appellant.

In re: Condemnation By the Commonwealth of Pennsylvania, Department of Transportation, of Right-of-Way for Legislative Route 1005-2, In Susquehanna Township at Front and Estherton Streets. Edwin B. Hershey, Executor of the Estate of Mary E. Hershey, *v.* Exxon Corporation, Lessee, *v.* Commonwealth of Pennsylvania, De-

partment of Transportation. Edwin B. Hershey, Executor of the Estate of Mary E. Hershey, Appellant.

Argued June 5, 1975, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Robert C. Spitzer,* with him *Nauman, Smith, Shissler & Hall,* for appellant, Exxon Corporation.

*Henry W. Rhoads,* with him *Robert L. Weldon,* and *Rhoads, Sinon & Reader,* for appellant, Edwin B. Hershey.

*Thomas R. Jargiello,* Assistant Attorney General, with him *Robert W. Cunliffe,* Deputy Attorney General, and *Robert P. Kane,* Attorney General, for appellee.

OPINION BY JUDGE KRAMER, July 30, 1975:

This opinion involves two appeals from an order from the Court of Common Pleas of Dauphin County which sustained the objection of Exxon Corporation to a report of a Board of View and overruled objections of Edwin B. Hershey, Executor of the Estate of Mary E. Hershey. These two objectors are the appellants in the two appeals. The lower court concluded that Exxon had a compensable leasehold interest in land owned by Hershey and that, therefore, the Board of View erred in refusing to award Exxon damages. The court also refused to remand the proceedings to the Board of View, as had been requested by Exxon.

The record before us consists only of pleadings and the opinion and order of the court below. By a lease dated July 12, 1957, Exxon (then Esso Standard Oil Company) leased a parcel of ground from Hershey for use as a service station. The lease was for a fixed term of 15 years, commencing August 1, 1957 and terminating July 31, 1972. It contained ten automatic one-year renewal options

which were considered as having been exercised unless Exxon gave written notice to the contrary thirty days before the expiration of the period then in effect. Pertinent to this case is paragraph 11 of that lease, which reads as follows:

"(11) If the demised premises or any part thereof shall be taken by or pursuant to governmental authority or through exercise of the right of eminent domain, or if a part only of said premises is taken and the balance of said premises in the opinion of Lessee is not suitable for the operation of a drive-in gasoline service station, this lease, at the option of Lessee, shall terminate without further liability on the part of Lessee, or the rent hereunder shall be reduced in proportion to the reduction in the area of the premises, but nothing herein shall be deemed a waiver of the sole right of Lessee to any award for damages to it or to its leasehold interest caused by such taking, whether made separately or as part of a general award."

Without any formal declaration of taking filed by the Pennsylvania Department of Transportation (PennDOT), it erected, on or about November 6, 1972, a curb and fence on or immediately adjoining Hershey's property. The erection of the curb and fence completely denied all access to and from one of the public streets abutting the subject property. As part of PennDOT's plan, another abutting street is to be closed, landlocking the property. Exxon vacated the premises on January 4, 1970, almost three years prior to the construction by PennDOT, but Exxon continued to pay the rent through November of 1972. Exxon, by a letter dated December 14, 1972, informed Hershey that no further rent would be paid. On September 6, 1973, Hershey filed a petition for the appointment of viewers and on September 14 and 24, 1973, respectively, counsel for Exxon and PennDOT entered appearances.

The court appointed viewers on December 13, 1973, and hearings were held during the month of June, 1974. No transcript of the hearing before the Board of View was kept or filed, but the parties agree counsel for Exxon was present throughout the proceedings. The Board of View's report concluded that (1) the only damages suffered were in the nature of consequential damages; (2) Exxon was not entitled to any compensation; and (3) Hershey was entitled to consequential damages of $38,310, plus $2,500 for attorney's fees and expenses, and $750 for appraisal expenses. The total award was $41,560, including interest for the period from November 6, 1972 to June 6, 1974, with additional interest on the $41,560 from June 7, 1974. Exxon, Hershey and PennDOT all appealed separately to the court below. In Exxon's appeal it filed objections to the viewers' report contending that, as lessee, it was entitled to compensation for the taking of its leasehold interest, and requesting that the matter be remanded to a Board of View to permit Exxon to present its case. Hershey and PennDOT each made general objections "to the entire award and report" and demanded a jury trial.

Without receiving any testimony or evidence, the court below, apparently after the filing of briefs and the hearing of arguments, issued an opinion in which it concluded, as a matter of law, that Exxon was entitled to consequential damages under section 612 of the Eminent Domain Code[1]. The court refused to remand to another Board of View and stated that the appeal "should proceed to jury trial."[2]

1. Act of June 22, 1964, Sp. Sess., P.L. 84, 26 P.S. §1-612 (Supp. 1975-1976).

2. On October 28, 1974, Exxon petitioned for the payment of estimated just compensation. However, this matter is not before us, and the court below, on January 27, 1975, long after the appeals were taken to this Court, issued an order dismissing the petition without prejudice because it was deemed to be premature.

Exxon contends that it has compensable rights as a lessee and that the court below erred in refusing to remand the case to the same or a new Board of View. Hershey contends that the lower court erred in deciding, prior to any trial, that Exxon had a compensable interest.

This case has not reached the posture necessary for either this Court or the court below to decide, on the merits, whether Exxon has a compensable interest. Section 515 of the Code, 26 P.S. §1-515 (Supp. 1975-1976), provides that any party aggrieved by the decision of the viewers may appeal to a court of common pleas within 30 days from the filing of the report. Such appeal must raise all objections of law or fact to the viewers' report. Section 517 of the Code, 26 P.S. §1-517, states:

> "All objections, other than to the amount of the award, raised by the appeal shall be determined by the court *preliminarily*. The court may confirm, modify, change the report or refer it back to the same or other viewers. A decree confirming, modifying or changing the report shall constitute a final order." (Emphasis added.)

The court below utilized this paragraph as its authority to make a final determination of Exxon's interest. Although a literal reading of the first sentence suggests that the court below could make such a final determination (on a matter other than the amount of an award), we hold that the legislative intent of section 517 is to permit the lower court to decide preliminarily only *questions of law* basic to the inquiry. If the court below is considering objections to the report of the Board which raise pure questions of law, the court may preliminarily determine such questions without any fact finding process. But where the objections presented to the court below involve fact finding or mixed questions of law and fact, it is improper for the lower court to decide such questions preliminarily *solely upon the filing of briefs and the hearing of argument*.

Section 517 requires that *the court preliminarily* decide questions not involving the amount of an award, but it does not require or authorize a court to resolve factual issues without the benefit of all relevant evidence. Because the statute is silent on the method to be used by the court in resolving factual issues, the procedure for any given case is within the discretion of the trial judge. The judge may resolve factual questions by obtaining stipulations, by reference to a transcript of the evidence presented to the Board of View,[3] by a separate evidentiary hearing prior to trial, or by evidence adduced at trial but not submitted to the jury. As long as the method used is fair to all of the parties, the alternative chosen by the trial judge is solely a matter of discretion. The important thing is that no objections which involve a question of fact be decided without an orderly fact finding process.

The objection presented by Exxon regarding its rights under the lease was not a pure question of law. In addition, the court had no transcript of what had transpired before the Board of View. It is conceivable that if all of the parties involved had stipulated facts to the court, the court could have proceeded to an informed preliminary determination. That was not done here. It is conceivable that upon hearing Hershey could present some evidence which would indicate that Exxon had somehow voided the contract prior to the date of the taking (November 6, 1972) or Hershey might have presented evidence of a separate contract which would have voided Exxon's rights. Neither this Court nor the court below has any idea, without a record properly made, whether Exxon has any compensable rights. The answer to that issue involves mixed questions of law and fact which cannot be intelligently resolved without the receiving of evidence

---

3. The use of a transcript would have to be conditioned upon the parties having been afforded a full and fair opportunity to offer any relevant evidence.

in some form. As a result this matter must be remanded to the court below.

With respect to the issue raised by Exxon that the court erred by not remanding the entire matter to the same or another Board of View, we again refer to section 517 of the Code, where we find a grant of broad discretionary authority to the courts of common pleas with respect to decisions to remand. In this regard, we affirm the decision of the court below. Section 507 of the Code, 26 P.S. §1-507 (Supp. 1975-1976), directs that the claims of all of the interested parties to a condemnation, including tenants, be heard *or tried* together and we can see no way in which Exxon's interest in this case can be injured by our disposition of this appeal. Whether Exxon has any compensable interest will be determined through some process during which Exxon may present all of the evidence and testimony it believes is necessary to prove its claim.

In summary, we must reverse the court below and remand the matter for the purpose of first determining whether Exxon has any compensable rights. After that matter has been determined, the court should dispose of the remaining issues in accordance with the provisions of the Eminent Domain Code. As a result, we

## ORDER

AND NOW this 30th day of July, 1975, the order of the Court of Common Pleas of Dauphin County filed November 12, 1974, in the above-captioned matter is hereby vacated and this entire matter is remanded to that court for further disposition consistent with the above opinion.