637 A.2d 731

Dolores M. WAROS and the Regular Policemen of the Borough of Vandergrift, an Unincorporated Association, Appellants,

v.

BOROUGH OF VANDERGRIFT, a Municipal Corporation.

Commonwealth Court of Pennsylvania.

Argued Nov. 18, 1993.

Decided Feb. 1, 1994.

Raymond F. Sekula, for appellants.

Thomas R. Ceraso, for appellee.

Before McGINLEY and KELLEY, JJ., and NARICK, Senior Judge.

KELLEY, Judge.

Vandergrift Borough Police Officer William J. Waros (Officer Waros) died on February 20, 1990 at sixty-one years of age. He was survived by his wife, Dolores Waros, one of the appellants herein.

At the time of Officer Waros' death, he had been employed for twenty-two and one-half years as a regular, full-time, police officer of the appellee, the Borough of Vandergrift (borough). Officer Waros began his employment with the borough on September 7, 1967, at which time the borough's Police Pension Ordinance, known as Ordinance 1–1958 provided in pertinent part as follows:

> Upon completion of the minimum service and age requirements as prescribed by Act 358 of the 1957 Legislature as enacted or amended, the officer shall be eligible to retire on the minimum pension as set forth, ...

Borough Ordinance 1–1958 was adopted on January 10, 1958. At that time, Act 358 of 1957 (Act 358) [1] had not been amended and existed in its original form.[2] As enacted, the terms of section 3 of Act 358 permitted boroughs to provide pension benefits to police personnel who satisfied a minimum service requirement of twenty (20) years and a minimum age requirement of sixty (60) years.

Prior to Officer Waros' employment date, section 3 of Act 358 was amended such that the minimum requirements for pension entitlement as a borough police officer were reduced to twenty-five (25) years of service and fifty-five (55) years of age. Thus, Officer Waros, at the time of his employ on September 7, 1967, was required to serve a period of 25 years and be 55 years of age in order to be eligible for a pension.

Section 3 of Act 358 is encompassed in 53 P.S. § 769, and at the time of Officer Waros' employ, read as follows:

*Each ordinance* or resolution *establishing a police pension fund shall prescribe a minimum period of total service in the aggregate of twenty-five years in the same borough,* town or township *and shall fix the age of the members of the force at fifty-five years, or,* if an actuarial study of the cost shows that such reduction in age is feasible, may fix the age of the members of the force at fifty years, after which they may retire from active duty, and such members as are retired shall be subject to service, from time to time, as a police reserve, in cases of riot, tumult or preservation of the public peace until unfitted for such service, when they may be finally discharged by reason of age or disability. (Emphasis added.)

Notwithstanding any provisions of this act, members of a police force for whom a pension fund has heretofore been established who have attained or attain the age of sixty years, or fifty-five years, if the age had been so fixed by the

1. Act of July 10, 1957, P.L. 676, 53 P.S. § 769.

2. Act 358 was an amendment to Act 600 of 1956, Act of May 29, 1956, P.L. (1955) 1804, 53 P.S. § 767, which was the original legislation authorizing boroughs to provide pension benefits to police personnel.

ordinance or resolution, may retire after a period of total service of twenty years.

The legislature amended section 5 of Act 358 [3] by permitting boroughs to provide for the vesting of a deferred partial pension to be paid when a police officer reaches superannuation age [4] if termination from employment occurs after twelve years of service. In pertinent part, section 5 of Act 358 currently reads as follows:

The ordinance or resolution establishing the police pension fund *may* provide for a vested benefit provided that such would not impair the actuarial soundness of the pension fund. Under the provisions of such benefit, *should a police officer, before completing superannuation retirement age and service requirements but after having completed twelve years of total service, for any reason cease to be employed as a full-time police officer* by the municipality in whose pension fund he has been a member, *he shall be entitled to vest his retirement benefits* by filing with the governing body within ninety days of the date he ceases to be a full-time police officer a written notice of his intention to vest. Upon reaching the date which would have been his superannuation retirement date if he had continued to be employed as a full-time police officer he shall be paid a partial superannuation retirement allowance determined by applying the percentage his years of service bears to the years of service which he would have rendered had he continued to work until his superannuation retirement date to the gross pension, using however the monthly average salary during the appropriate period prior to his termination of employment.... (Emphasis added.)

On November 1, 1984, the Regular Policemen of the Borough (Regular Policemen), the exclusive bargaining representative for the borough's regular police officers, negotiated with the borough to provide pension benefits for widows of deceased police officers. Article XX, Paragraph 4 of the collec-

3. Act of December 7, 1979, P.L. 475, No. 99, 53 P.S. § 771.

4. Age fifty-five with twenty-five years of service.

tive bargaining agreement between the borough and the Regular Policemen dated July 3, 1989, pertains to calendar years 1990, 1991 and 1992, and carries forward the language as it was originally adopted concerning pension benefits for widows of deceased borough police officers. Article XX, Paragraph 4 reads as follows:

> The Borough agrees to provide that in the event of the death of a Policemen [sic] who was receiving a pension *or who had qualified for a [sic] retirement pension benefits but was not retired,* his widow shall be entitled, during her lifetime or so long as she does not remarry, to receive a pension equal to fifty (50%) per cent of the pension the Policemen [sic] was receiving or would have been receiving had he been retired at the time of his death. (Emphasis added.)

At the time of Officer Waros' death on February 20, 1990, Article XX, Paragraph 4, as quoted immediately above, was in effect.

On December 3, 1984, the borough council repealed Ordinance 1–1958 and adopted Ordinance 8–1984 which, in section 7 of that ordinance, provided for the vesting of a pension after the completion of twelve years of continuous service if employment is terminated for any reason *except death or normal retirement.* Section 7 of Ordinance 8–1984 reads as follows:

### Section 7. *Vesting.*

1. A Participant shall be eligible to elect a Deferred Vested Pension commencing at his retirement date in accordance with the provisions of this Plan, *if his employment is terminated for reasons other than death or retirement* after he has completed twelve (12) years of aggregate service, and he has not withdrawn his accumulated Participant contributions.

2. Such vesting option must be exercised by the Participant by filing a written notice of his intention to vest with the Borough within ninety (90) days of the date he ceases to be a full-time police officer of the Borough.

3. A Participant who exercises such an option shall be eligible, upon attainment of what would have been his Normal Retirement Date had he continued to be full-time police officer of the Borough, to a vested retirement benefit equal to the amount provided in Section 5, multiplied by a fraction, the numerator of which shall be the Years of Service completed by the Participant and the denominator of which shall be the Years of Service which the Participant would have completed had he continued as a full-time police officer of the Borough until his Normal Retirement Date. *If a Participant elects to vest his benefit but dies prior to the commencement thereof, the beneficiary of such Participant shall be entitled to a refund of the Participant's accumulated contributions with interest thereon at the rate of five (5%) percent per annum.* (Emphasis added.)

On April 30, 1990, Mrs. Waros communicated her intention to the borough to vest a pension as the surviving spouse of Officer Waros. Mrs. Waros based her action on Article XX, Paragraph 4 of the collective bargaining agreement, and the terms of Ordinance 1–1958 which, she claimed, by its self-executing language adopted vesting of partial pension benefits after twelve years of employment because under the terms of Ordinance 1–1958, such a pension was the "minimum pension" set forth in Act 358, as amended by 53 P.S. § 771.

However, pursuant to section 9 of Act 358 governing refunds[5], the borough only returned to Mrs. Waros her husband's contributions which were made to the pension fund by him during his employment. In her letter dated April 30, 1990, Mrs. Waros advised that she wished to return these contributions and requested that she be informed as to whom the funds should be returned. Receiving no acknowledgment

---

**5.** 53 P.S. § 775. Section 9 provides in relevant part:

**Refunds**

Any member of a police force of a borough, town or township, who for any reason whatsoever, shall be ineligible to receive a pension after having contributed any charges to a police pension fund ... shall be entitled to a refund of all such moneys paid by him into such funds plus all interest earned ... immediately upon discontinuance of his employment with the police force.

of the letter, Mrs. Waros and the Regular Policemen (jointly, appellants) filed a complaint for declaratory judgment with the Court of Common Pleas of Westmoreland County (trial court) on September 13, 1990. The complaint sought a determination of whether or not Mrs. Waros is entitled to a pension in her capacity as the widow of Officer Waros.

A hearing was held before the trial court and, on September 25, 1992, an opinion and order was issued in favor of the borough. The trial court determined that the twelve-year vesting provisions as enacted by Ordinance 8–1984 are not applicable in death situations. Accordingly, since Officer Waros at the time of his death had not reached twenty-five years of service, neither he nor his widow were found to be entitled to any pension benefits.

Appellants filed timely exceptions and a request for reconsideration which were argued before the trial court. The trial court affirmed its original order stating that (1) Mrs. Waros was not entitled to a pension because Ordinance 1–1958 was not self-executing in adopting the partial pension benefits provided by section 5 of Act 358; (2) even if Ordinance 1–1958 was self-executing, Officer Waros had not lived to superannuation age in order to vest a pension pursuant to section 5 of Act 358; and (3) Mrs. Waros was not entitled to a widow's pension because such award was not provided for in section 5 of Act 358. Appellants now appeal from this order.

On appeal, appellants present us with a single question for our consideration: whether the surviving spouse of a borough police officer is contractually entitled to a pension from the borough when the decedent had satisfied the minimum age and service requirements to vest as set forth in section 5 of Act 358.[6]

Ordinance 1–1958 specifically provided that borough police officers were eligible to retire pursuant to the minimum pension provisions set forth by Act 358 as enacted *or amend-*

6. We note that our scope of review in equity matters is limited to a determination of whether the trial court abused its discretion or committed an error of law. *Quaker City Yacht Club v. Williams,* 59 Pa.Commonwealth Ct. 256, 429 A.2d 1204 (1981).

*ed.* At the time Officer Waros was employed, the minimum requirements were fifty-five years of age and twenty-five years of service. Appellants argue that these minimum requirements were reduced on January 1, 1980 with the amendment of section 5 which provided for a vested pension after an officer completed twelve years of service and terminated his employment for any reason. Appellants argue that this amendment to Act 358 reduced the amount of service time needed to vest under Ordinance 1–1958 from twenty-five to twelve years. By self-execution, the argument maintains, Ordinance 1–1958 adopted any subsequent reduction in age or service requirements set forth as amendments to Act 358.

Further, assuming that Officer Waros was himself eligible for partial benefits, appellants argue that Mrs. Waros is entitled to the pension because Article XX, Paragraph 4 of the collective bargaining agreement provided a police officer's widow a pension equal to 50% of the pension the police officer was receiving or would have been receiving had he been retired at the time of his death.

Finally, appellants assert that the trial court erred by concluding that Ordinance 1–1958 was not self-executing, and that even if the Ordinance was self-executing, Officer Waros had to live to superannuation age in order to vest a pension pursuant to section 5 of Act 358.

■ Section 3 of Act 358, 53 P.S. § 769, prescribes the mandatory age and service requirements that all boroughs must incorporate in their local police pension ordinances. The operative phrases in section 3 are that each ordinance "shall prescribe" a minimum service requirement in the amount of twenty-five years, and "shall fix" the age requirement at fifty-five years, 53 P.S. § 769. The legislative intent of section 3 is clearly mandatory, and self-executing, requiring no action by the borough to be enforceable. *Perruso v. Township of Palmer,* 141 Pa.Commonwealth Ct. 520, 596 A.2d 292 (1991). Section 3, as contemplated by Ordinance 1–1958, provides for a mandatory vesting after twenty-five years of service and fifty-five years of age. The language of Ordinance 1–1958

allows for the incorporation of these requirements, and is thus consistent with the statute.

In contrast, the operative word in section 5 is not "shall" but "may". This section of the statute reads that local ordinances "may provide" for a vested benefit with a twelve-year service requirement.

In *Kerr v. Borough of Union City*, 150 Pa.Commonwealth Ct. 21, 614 A.2d 338 (1992), an analogous scenario occurred whereby a police officer's widow applied for surviving widow pension benefits under a borough ordinance enacted pursuant to Act 600.[7] Among the issues raised by the widow in *Kerr* was the interpretation of the ordinance in light of the provisions of Act 600.

The trial court in *Kerr* interpreted the ordinance as not entitling the widow to widow's pension benefits. Widow argued that the court's interpretation was inconsistent with section 1 of Act 600, because widow interpreted the word "may" in section 1 to be mandatory rather than discretionary. In analyzing the intent of the legislature, we stated:

> When construing a statute, the starting point is the language therein; absent any evidence to the contrary, a statute's plain meaning must prevail. *Department of Environmental Resources v. City of Harrisburg*, 133 Pa.Commonwealth Ct. 577, 578 A.2d 563 (1990). Particularly significant in the present case is the fact that the legislature has used both the word "shall" and the word "may" in the same sentence, which suggests that the legislature intended "shall" and "may" to have separate meanings and not to be interchangeable. *In re: Columbia Borough*, 24 Pa.Commonwealth Ct. 190, 354 A.2d 277 (1976). Therefore, we conclude that the word "may" in section 1 is permissive and clearly manifests the legislative intent that the prescription of widow's benefits rests in the Borough's discretion. *See Commonwealth v. Garland*, 393 Pa. 45, 142 A.2d 14 (1958).

---

**7.** Act 358 was an amendment to Act 600, the original legislation authorizing boroughs to provide pension benefits to police officers.

Here, in a like fashion, the legislature intended the words "shall" and "may" to have separate meanings and not to be interchangeable. Thus, the language of section 3 is mandatory, while the language of section 5 is merely permissive. The prescription of vesting rights rests in the borough's discretion, and is not mandatory. Thus section 5 is not self-executing.

The borough chose to prescribe a twelve-year partial pension vesting provision by enacting Ordinance 8–1984. However, the terms of section 7 of Ordinance 8–1984 are considerably more restrictive than the terms of section 5 of Act 358. The terms of Ordinance 8–1984 preclude vesting of a pension if termination from employment is caused by death or normal retirement, whereas section 5 of Act 358 permits the vesting of a pension if after twelve years of service, termination from employment occurs for any reason.

Because section 5 of Act 358 is not self-executing, and is merely permissive, it is not inconsistent with the provisions of Ordinance 8–1984. The borough was under no mandate, by Ordinance 1–1958 or otherwise, to incorporate the provisions of section 5 of Act 358 into its pension plan.

We conclude that the mandatory vesting provisions as set forth in section 3 of Act 358 are determinative here. Officer Waros was required to reach twenty-five years of service and fifty-five years of age in order to be eligible for his pension. Unfortunately, he did not reach the requirements before his death. The twelve-year alternative vesting requirements under Ordinance 8–1984 were similarly not met because Officer Waros' employment was terminated for reason of his death.

Mrs. Waros' eligibility for pension benefits is derivative of her husband's eligibility to receive such benefits. *Cooley v. East Norriton Township,* 78 Pa.Commonwealth Ct. 11, 466 A.2d 765 (1983). Because we have determined that Officer Waros was ineligible, having not reached superannuation age, Mrs. Waros is entitled only to the refund of her husband's contributions pursuant to section 9 of Act 358, 53 P.S. § 775.

Accordingly, the order of the trial court is affirmed.

## *ORDER*

NOW, this 1st day of February, 1994, the order of the Court of Common Pleas of Westmoreland County, dated February 4, 1993, at No. 5990 of 1990, is hereby affirmed.