AMOCO OIL COMPANY
and Alice C. Weiss

v.

COMMONWEALTH of Pennsylvania,
DEPARTMENT OF TRANS-
PORTATION.

Appeal of AMOCO OIL CO., Appellant.

AMOCO OIL COMPANY
and Alice C. Weiss

v.

COMMONWEALTH of Pennsylvania,
DEPARTMENT OF TRANS-
PORTATION.

Appeal of Alice C. WEISS, Appellant.

Commonwealth Court of Pennsylvania.

Argued March 13, 1996.

Decided July 15, 1996.

Henry W. Rhoads, for Appellant, Amoco Oil Company.

Jeffrey L. Giltenboth, Senior Assistant Counsel, for Appellee.

Before COLINS, President Judge, and DOYLE, McGINLEY, PELLEGRINI, FRIEDMAN, KELLEY, and FLAHERTY, JJ.

KELLEY, Judge.

Amoco Oil Co. (Amoco) and Alice Weiss (Weiss) appeal from an order of the Court of Common Pleas of Allegheny County (trial court), dated May 23, 1994, denying their motions for post-trial relief in the form of a new trial. We reverse.

Amoco was a lessee of property owned by Weiss. The property, which was used as a gasoline service station, is located on Ohio River Boulevard, at the intersection of Camp Horne Road, in the Borough of Emsworth (borough), Allegheny County, Pennsylvania.

Pursuant to section 402(b) of the Eminent Domain Code (Code),[1] the Commonwealth of Pennsylvania Department of Transportation (DOT), filed a declaration of taking, condemning a portion of the property leased by Amoco. In effect, the taking rounded off the corner of Ohio Boulevard and Camp Horne Road, taking 512½ square feet of the real estate. Amoco ceased operation of its gasoline service station at some time subsequent to the declaration of taking.

In accordance with section 502(a) of the Code,[2] Amoco filed a petition for the appointment of viewers, which was granted by the trial court. By order of the trial court, Weiss was permitted to intervene. Both Amoco and Weiss[3] sought damages for the taking.

---

1. Act of June 22, 1964, Special Sess., P.L. 84, *as amended*, 26 P.S. § 1–402(b).

2. 26 P.S. § 1–502(a).

3. Where appropriate, Amoco and Weiss will be referred to collectively as condemnees.

A hearing before the Allegheny Board of Viewers (viewers) ensued. The viewers concluded that the taking made it impossible for Amoco to continue to use the property as a gasoline service station. The viewers reasoned that the subject property was altered in such a manner that it was not in compliance with the borough's zoning ordinance. Therefore, the viewers determined that the taking had destroyed Amoco's lease and prohibited further use of the property as a gasoline service station. Damages were awarded in the amounts of $131,000.00 to Amoco and $36,500.00 to Weiss.

Pursuant to section 515 of the Code, DOT, Weiss, and Amoco each appealed the viewers' report to the trial court.[4] The appeals of Weiss and Amoco pertained only to damages, but DOT's appeal raised additional objections to the viewers' report. Accordingly, DOT listed these objections, as required by section 516(a)(4) of the Code.[5]

In accordance with section 517 of the Code,[6] DOT sought preliminary disposition of the issue of whether Amoco had standing. DOT contended that certain provisions of the lease between Amoco and Weiss rendered Amoco an improper party. The trial court disagreed, however, and held that Amoco did have standing. DOT appealed the trial court's ruling to this court, and we affirmed. *See Amoco Oil Co. v. Department of Transportation*, 157 Pa.Cmwlth. 222, 629 A.2d 259 (1993) (*Amoco I*).

After this court's decision was issued, condemnees filed a motion for continuance, arguing that they did not have adequate time to prepare for trial. The trial court determined that even after this court's decision was issued, the parties still had ample time to prepare for trial and, therefore, were not prejudiced by the schedule. Accordingly, the condemnees' motion for continuance was denied.

A trial *de novo* commenced on September 22, 1993. Prior to the seating of the jury, Amoco filed a motion in limine, seeking to limit testimony to the issue of damages. The trial court denied the motion.

Following the trial, the jury returned a verdict awarding $8,000.00 in damages to Weiss. No damages were awarded to Amoco. Amoco and Weiss subsequently filed separate motions for post-trial relief, in which they sought a new trial.

In a joint brief in support of their motions for post-trial relief, condemnees alleged that the trial court committed several errors of law. The trial court ultimately concluded that the case was fairly tried before a properly instructed jury; therefore, there was no basis for disturbing the jury's verdict. Accordingly, the trial court issued an order dismissing condemnees' motions for a new trial.

Amoco and Weiss each appealed the order of the trial court to this court. The appeals were consolidated by order of this court, dated November 3, 1994, and the matter is now before us.

On appeal, condemnees present four issues for our review. First, did the trial court err in denying Amoco's motion in limine to limit testimony at trial to the issue of condemnation damages? Second, did the trial judge err in not attending the evidentiary view of the subject property in accordance with sec-

---

4. In pertinent part, section 515 provides:
   Any party aggrieved by the decision of the viewers may appeal to the court of common pleas. The appeal shall raise all objections of law or fact to the viewers' report.
   26 P.S. § 1–515.

5. Section 516(a)(4) states:

6. 26 P.S. § 1–517.

The appeal shall set forth:

. . . .

(4) objections, if any, to the viewers' report, other than to the amount of the award.
26 P.S. § 1–516(a)(4).

tion 703 of the Code?[7] Third, did the trial judge improperly admit severely prejudicial evidence concerning a clearly illegal use of the subject property after taking as proof of the extent of the taking? Fourth, did the trial court err in failing to give the jury one or all of the points for charge filed by Amoco and/or Weiss?

■ Our scope of review of a trial court's order denying a motion for a new trial is limited to a determination of whether the trial court abused its discretion or committed a clear error of law. *Milan v. Department of Transportation*, 153 Pa.Cmwlth. 276, 620 A.2d 721 (1993), *petition for allowance of appeal denied*, 535 Pa. 650, 633 A.2d 154 (1993); *Condemnation in Conewango and Pleasant Townships*, 23 Pa.Cmwlth. 343, 352 A.2d 244 (1976).

■ To establish reversible error, the complaining party must prove that the court erred and that the error was harmful. *Ligon v. Middletown Area School District*, 136 Pa. Cmwlth. 566, 584 A.2d 376 (1990).

## I. ISSUE I—MOTION IN LIMINE

Initially, condemnees argue that the trial court erred by denying Amoco's motion in limine to limit testimony to issues concerning the amount of condemnation damages. We disagree.

In its appeal from the viewers' report, DOT set forth its specific objections, thereby complying with section 516(a)(4) of the Code. Before the trial *de novo* commenced, DOT sought a preliminary determination as to whether Amoco was a proper party pursuant to section 517 of the Code, 26 P.S. § 1–517. However, DOT did not seek a preliminary determination as to any other objection. Condemnees believe that DOT was required to raise its other objections during the preliminary proceeding. Accordingly, condemnees argue that DOT's failure to do so constituted a waiver of all objections other than its objection to the amount of the award.

Our resolution of this question is governed by section 517 of the Code. In pertinent part, section 517 states:

### § 517 Disposition of appeal

All objections, other than to the amount of the award, raised by the appeal shall be determined by the court preliminarily. The court may confirm, modify, change the report or refer it back to the same or other viewers.

26 P.S. § 1–517.

■ Advocating a literal interpretation of this language, condemnees argue that section 517 requires the trial court to determine preliminarily all objections other than those to the amount of the award. This interpretation, nevertheless, has been rejected by this court as illustrated by *Condemnation Right of Way for Legislative Route 1005–2*, 20 Pa. Cmwlth. 537, 342 A.2d 497 (1975). There, we held that:

[T]he legislative intent of section 517 is to permit the lower court to decide preliminarily only *questions of law* basic to the inquiry. If the court below is considering objections to the report of the [viewers] which raise pure questions of law, the court may preliminarily determine such questions without any factfinding process. But where the objections presented to the court below involve factfinding or mixed questions of law and fact, it is improper for the lower court to decide such questions preliminarily *solely upon the filing of briefs and the hearing of argument.*

*Id.* 342 A.2d at 500 (emphasis in original).

■ Our review of the record reveals that the relevant objections, those raised on appeal but not raised in the preliminary proceeding, constituted mixed questions of law and fact. Accordingly, we find that these objections, which should not have been decided solely on briefs and oral argument, were properly preserved for the trial *de novo*.

Notwithstanding our holding in *Condemnation Right of Way for Legislative Route*

---

7. 26 P.S. § 1–703.

*1005–2,* condemnees contend that their position is supported by case law. They cite *Jennings v. Department of Transportation,* 38 Pa.Cmwlth. 206, 395 A.2d 582 (1978). Their reliance on *Jennings,* however, is misplaced.

In *Jennings,* the trial court had granted a motion in limine, prohibiting DOT from introducing evidence that the taking of property had been less than a total de facto taking. Contrary to section 516(a)(4) of the Code, DOT had failed to set forth any specific objections to the viewers' report in its appeal. Accordingly, this court determined that DOT had failed to properly preserve its issues for trial. Precisely for this reason, the trial court granted the condemnees' motion in limine.

In the present case, it is undisputed that DOT complied with section 516(a)(4) of the Code by listing its specific objections to the viewers' report. Thus, *Jennings* is inapplicable.

As a result of the dismissal by the trial court and this court of DOT's appeal regarding standing, condemnees argue that DOT's objections were waived. This argument is flawed in the respect that it disregards the nature of the dismissed appeal. *See Amoco I.*

As previously noted, the trial court issued a preliminary determination that Amoco was a proper party to this lawsuit. DOT appealed the trial court's preliminary determination to this court. We affirmed the decision of the trial court and dismissed Amoco's appeal. It is undisputed, however, that in the proceeding before the trial court and in the appeal therefrom, the only issue presented was whether Amoco was a proper party. Because the other issues were never presented for appellate review, there is no support for the argument that Amoco's appeal from the viewers' report was dismissed entirely.

For the preceding reasons, we conclude that the trial court did not err in denying

condemnees' motion in limine to limit testimony to the issue of damages.

## II.  ISSUE II—TRIAL COURT'S VIEWING OF SUBJECT PROPERTY

■ Condemnees argue that the trial court committed reversible error by failing to attend the jury's viewing of the property.[8] In eminent domain proceedings, appeals in courts of common pleas are governed by section 703 of the Code. Section 703 provides, in pertinent part, that:

At the trial in court on appeal:

(1) Either party may, as a matter of right, have the jury, or the judge in a trial without a jury, view the property involved, notwithstanding that structures have been demolished or the site altered, and the view shall be evidentiary. *If the trial is with a jury, the trial judge shall accompany the jury on the view.*

26 P.S. 1–703(1) (emphasis added).

Condemnees argue that the plain wording of the statute establishes that the trial judge's presence at the viewing was mandatory. We agree.

■ It is well settled that when the words of a statute are clear and free from ambiguity, the letter of the law may not be disregarded under the pretext of pursuing its spirit. 1 Pa.C.S. § 1921(b); *Glendon v. Department of Environmental Resources,* 145 Pa.Cmwlth. 238, 603 A.2d 226 (1992), *petition for allowance of appeal denied,* 530 Pa. 657, 608 A.2d 32 (1992). Section 703 expressly states that "the trial judge's presence *shall* be mandatory." 26 P.S. § 1–703 (emphasis added). Because the General Assembly used the word "shall" rather than the word "may," it is clear that the judge's presence at the viewing is mandatory. *See Waros v. Borough of Vandergrift,* 161 Pa.Cmwlth. 538, 637 A.2d 731 (1994), *appeal dismissed,* 540 Pa. 523, 658 A.2d 786 (1995).

---

**8.** DOT alleges that only Amoco has standing to raise this issue, as Weiss did not preserve the issue by raising a timely objection during the trial. However, because the appeals of Amoco and Weiss have been consolidated, this court will consider any issue that has been properly preserved by either appellant.

Although the precise question raised by Amoco appears to be an issue of first impression in Pennsylvania, a decision by our Supreme Court provides some guidance. *See Commonwealth v. 108.3 Acres of Land,* 431 Pa. 341, 246 A.2d 124 (1968). In *108.3 Acres of Land,* the Supreme Court was called upon to determine whether there was sufficient evidence for a trial court to conclude that the amount awarded by jury verdict was excessive. The Supreme Court disagreed that the section of the Code *"requiring* the trial judge to accompany the jury on the view" did not authorize the judge to consider his own observations in determining whether the verdict was excessive. *Id.* at 344, 246 A.2d at 125 (emphasis added) (referring to section 703(1) of Code). In substantiating its position, the Supreme Court stated:

> Since the view is to be considered evidentiary, what the trial judge as well as the jury saw must constitute part of the evidence and therefore was properly considered by the court en banc in making its decision as to whether the weight of the evidence supports the verdict of the jury.

*Id.*

■ This statement reminds us of the extensive responsibilities of the trial judge. A judge's responsibilities are not confined to rulings on the admissibility of evidence. Equally significant is a judge's responsibility to attentively listen to all testimony and carefully observe other evidence presented to the jury. The importance of this aspect of the judge's role should not be underestimated. By observing the presentation of all evidence, a judge acquires the perspective and understanding necessary to properly instruct the jury.

A viewing of property occurs outside of the courtroom for reasons of obvious necessity. Nevertheless, what is observed at the viewing constitutes evidence. Contrary to DOT's position, the fact that the judge has access to a full transcript of the viewing does not compensate for his or her absence.

For these reasons, we conclude that the trial judge's presence at the viewing is man-datory pursuant to section 703 of the Code. Accordingly, we hold that the trial court erred as a matter of law by failing to attend the viewing.

■ Further, the trial court's error was harmful to the condemnees. We agree that the judge's failure to attend the viewing made it impossible for him to fully understand the nature of the taking. In particular, it was impossible for the judge to fully comprehend the parties' positions regarding the alleged safety problems resulting from the taking. As discussed in a subsequent section of this opinion, we have held that the trial court committed reversible error by inadequately charging the jury. We believe that the inadequacy of the instructions is attributable, at least in part, to the judge's failure to observe the property firsthand. Accordingly, the judge's failure to attend the viewing constituted reversible error.

## III. ISSUE III—TESTIMONY REGARDING USE OF PROPERTY AFTER TAKING

■ Condemnees argue that the trial court committed reversible error by permitting testimony concerning illegal use of the subject property as a gasoline service station after the taking. The testimony was presented by DOT as evidence of the extent of the taking. Condemnees' argument that the testimony was erroneously admitted is premised on principles of zoning law.

### A. ZONING REQUIREMENTS

Section 709 of Ordinance 775, the Official Zoning Ordinance of the Borough of Emsworth (or zoning ordinance or ordinance), permits gasoline service stations as a conditional use of property located in B–2 business districts, provided that minimum requirements are satisfied. One requirement is a lot width of no less than one hundred feet on any street providing access to the lot. Ordinance 775, Article VII, § 709.01, Reproduced Record (R.) at 975a. It is further required that structures or gasoline pumps be located

at least twenty feet away from the curb line of any street. Ordinance 775, Article VII, § 709.02, R. at 975a.

## B. TESTIMONY

Martin Vinci, Esq., borough solicitor, testified that Amoco could have continued to use the subject property as a gasoline service station, although the use would be illegal without a variance. *See* R. at 670a–79a.

DOT's other witnesses included William Kristufek, who was Amoco's sub-tenant and operator of the gasoline service station from 1984 through 1992.[9] Mr. Kristufek testified that he thought that Amoco had made "a stupid mistake." R. at 706a. He further testified that the taking made the property more accessible for cars. *Id.* at 707a.

Mr. Francis Chiapetta, a real estate appraiser, also testified for DOT. He testified that in his opinion, the property was essentially unaffected by zoning. R. at 758. When asked if he considered that zoning would prohibit use of the property as a service station, Chiapetta responded that he did not. In support of this contention, Chiapetta testified that he was aware of no case in which "a property [was] shut down" because its use was affected by condemnation. R. at 759a. He further stated: "It has been my experience that [DOT] doesn't do that—or that municipalities do not do that." *Id.*

## C. CONDEMNEES' ARGUMENT

Condemnees argue that it would be impossible to continue to operate a gasoline service station on the subject property without violating zoning requirements. Condemnees acknowledge that there are three theories of zoning law under which a property owner may seek authorization for violation of a zoning requirement. These theories are the non-conforming use, the variance and the vested right. However, as illustrated by the following discussion, condemnees maintain that they would be unable to satisfy the

criteria necessary to prevail under any of these theories.

### 1. *NON–CONFORMING USE*

■■■■ Non-conforming uses are generally protected in the face of changing zoning requirements. *See Appeal of Miller,* 511 Pa. 631, 515 A.2d 904 (1986). It is undisputed that prior to the taking, the subject property was in violation of the zoning requirements regarding lot width and placement of pumps. Evidence in the record indicates that the pumps were less than twenty feet from the curb line and that the width of the lot on Camp Horne Road was ninety-seven feet, four inches. *See* R. at 430a–35a. Because these conditions pre-dated the zoning ordinance, the property was in legal non-conformance with these requirements.

It is also undisputed that the taking has resulted in changes in the dimensions of the property. Condemnees argue that these changes are not protected as non-conforming uses because the zoning requirements existed at the time that the changes were made. Condemnees rely on *Pennsylvania Northwestern Distributors v. Zoning Hearing Board of the Township of Moon,* 526 Pa. 186, 584 A.2d 1372 (1991).

In *Pennsylvania Northwestern Distributors,* our Supreme Court observed that "[a] lawful nonconforming use establishes in a property owner a vested property right which cannot be abrogated or destroyed, unless it is a nuisance, it is abandoned, or it is extinguished by eminent domain." *Id.* at 192, 584 A.2d at 1375; *see also Bachman v. Zoning Hearing Board of Bern Township,* 508 Pa. 180, 186, 494 A.2d 1102, 1105 (1985) (denying continuance of non-conforming and stating that owner was "essentially in the same position as any victim of eminent domain"). In light of these cases, we agree that condemnees' legally non-conforming use of the subject property was extinguished.

### 2. *VARIANCE*

Mr. Vinci testified that condemnees could have applied for a variance. However, he

---

9. The record indicates that Mr. Kristufek was permitted to intervene in the lawsuit giving rise

to this appeal. *See* order of February 19, 1992, Original Record (O.R.) at 6.

admitted that he did not know whether condemnees were legally entitled to such a variance. *See* R. at 679a.

Section 910.2 of the Pennsylvania Municipalities Planning Code [10] (MPC) sets forth five requirements that a party must satisfy in order to obtain a variance from a zoning restriction. Two of these requirements are:

(1) That there are unique physical circumstances or conditions, including irregularity, narrowness, or shallowness of lot size or shape, or exceptional topographical or other physical conditions peculiar to the particular property and that the unnecessary hardship is due to such conditions and not the circumstances or conditions generally created by the provisions of the zoning ordinance in the neighborhood or district in which the property is located.

(2) That because of such physical circumstances or conditions, there is no possibility that the property can be developed in strict conformity with the provisions of the zoning ordinance and that the authorization of a variance is therefore necessary to enable the reasonable use of the property.

■ Condemnees contend that they are unable to satisfy these requirements. In order to establish unnecessary hardship, an applicant must prove: (1) that the property's physical characteristics preclude its use for any permitted purpose or that the property's use for such purposes would result in a prohibitive expense, or (2) that the characteristics of the property are such that the property has either no value or only a distress value for any permitted purpose. *Vanguard v. Zoning Hearing Board,* 130 Pa.Cmwlth. 371, 568 A.2d 703 (1989), *petition for allowance of appeal denied,* 527 Pa. 620, 590 A.2d 760 (1990).

Condemnees maintain that they are unable to demonstrate that the property could not possibly be developed to strictly conform to the ordinance. This argument is premised on the fact that the ordinance permits a number of uses for property in a B–2 district, for which a lot width of one hundred feet is not required. *See generally* Ordinance 775, Article VII, R. at 970a–74a. Accordingly, without substituting this court's judgment for that of the local zoning hearing board, we agree that condemnees' chances of obtaining a variance are minimal.

### 3. *VESTED RIGHT*

Condemnees contend that the vested right theory is inapplicable to the facts of their case. Generally speaking, cases based on claims of vested rights tend to involve the issuance of a permit or a change in zoning requirements. *See, e.g., Department of Environmental Resources v. Flynn,* 21 Pa. Cmwlth. 264, 344 A.2d 720 (1975) (finding that appellee had vested right to erroneously issued permit). Here, neither situation exists. We, therefore, have no reason to believe that condemnees would succeed in establishing a vested right to continue to operate a gasoline service station on the subject property.

### D. DISCUSSION

To determine whether the testimony in question was improperly admitted, we find *Snyder v. Commonwealth,* 412 Pa. 15, 192 A.2d 650 (1963) to be instructive. In *Snyder,* the Supreme Court considered the propriety of evidence of property value based on a property use that was not permitted by the zoning ordinance at the time of trial.

In its analysis, the Supreme Court noted the general rule and its exception. The Supreme Court stated:

The general rule is that evidence of increased value is inadmissible where the increase would result from a use proscribed by zoning regulations. 4 Nichols on Eminent Domain § 12.322 (Rev.3d ed. 1962). However, an exception to this rule has been recognized in jurisdictions passing on this issue. Nichols, § 12.322[1] states it as follows:

---

10. Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. § 10910.2.

'Where the enactment of the zoning restriction is not predicated upon the inherent evil of the proscribed use—in other words, where the forbidden use is malum prohibitum rather than malum in se—and there is a possibility or probability that the zoning restriction may in the near future be repealed or amended so as to permit the use in question, such likelihood may be considered if the prospect of such repeal or amendment is sufficiently likely as to have an appreciable influence upon present market value. It follows from the foregoing that such possible change in the zoning regulations must not be remote or speculative.' (Footnotes omitted).

*Id.* at 18–19, 192 A.2d at 652; *see also Earl M. Kerstetter, Inc. v. Commonwealth,* 404 Pa. 168, 171 A.2d 163 (1961) (holding that unapproved plan for subdivision was improperly admitted); *Department of Transportation v. WWSW Radio, Inc.,* 34 Pa.Cmwlth. 287, 383 A.2d 552 (1978) (stating that speculative or remote evidence should not be admitted to enhance or depreciate value of property).

In light of *Snyder* and its progeny, we conclude that the trial court erred in permitting testimony as to a property use prohibited by the zoning ordinance. Because there are neither allegations nor evidence that a change in applicable zoning regulations is imminent, there is no basis for considering the applicability of an exception to the general rule.

Furthermore, we reject DOT's assertion that condemnees were required to challenge the zoning ordinance before claiming damages. DOT relies on *Gaebel v. Thornbury Township,* 8 Pa.Cmwlth. 399, 303 A.2d 57 (1973). In *Gaebel,* a property owner argued that the change in a zoning requirement was confiscatory and that he was, therefore, entitled to damages under the Code. Because changes in zoning restrictions are effectuated by the exercise of police power, this court held that the law of eminent domain was not applicable. Here, there was no change in the zoning requirement. Consequently, *Gaebel* is not applicable.

■ Further, the trial court's error was harmful to condemnees. The improperly admitted testimony permitted the jury to conclude that the subject property could have remained in use as a service station after the taking and that Amoco's lease, therefore, had not been destroyed.

DOT contends that Amoco terminated its lease for other reasons. Therefore, DOT argues that testimony regarding the property's continued use as a service station was not harmful to condemnees. Rather, DOT suggests that the jury simply was not convinced that zoning was a factor in Amoco's decision to cease operation of its gasoline service station. We find this argument unpersuasive. The possibility of another basis for the jury's verdict does not excuse the admission of testimony that is both misleading and prejudicial. Accordingly, we hold that reversible error has occurred.

## IV. ISSUE IV—JURY CHARGE

■ Finally, condemnees argue that the trial court erred in failing to adequately charge the jury. To constitute reversible error, a jury instruction must have been both erroneous and harmful to the complaining party. *Pennsylvania State Police v. Howard,* 113 Pa.Cmwlth. 31, 536 A.2d 476 (1988). In order to determine whether such reversible error has occurred, the appellate court must review the charge in its entirety. *Id.*

■ Where a trial court has refused to give a proper instruction requested by a party, there are grounds for a new trial only if the substance of the requested instruction has not otherwise been covered by the general charge. *Ligon.* A trial court has broad latitude in the choice of language used in charging a jury. *Jones v. Port Authority,* 136 Pa.Cmwlth. 445, 583 A.2d 512 (1990). However, if the trial court's charge fails to adequately explain the principle involved, a new trial must be granted. *Id.*

■ Condemnees argue that the trial court erred by failing to properly instruct the jury on relevant zoning law. We agree.

In charging the jury, the judge stated that he had not been informed of any authority in the law of Pennsylvania that would definitively say that the subject property could not be used as a service station. R. at 855a. The judge added that "nothing submitted by counsel or that my own research has disclosed would say that under no circumstances could Amoco have continued to operate this service station because of zoning impediments." *Id.* The judge further stated that Mr. Vinci, the borough solicitor, had testified that he would recommend a variance. *Id.*

The above instructions should have included an explanation of the relevant zoning law. Because we have already concluded that the trial court erred in permitting testimony regarding the feasibility of a property use that is prohibited by the zoning ordinance, we must also conclude that the foregoing instructions are erroneous.

In particular, we note the trial court's failure to provide the jury with an explanation of the requirements for obtaining a variance. Moreover, we believe that the trial court should have clarified that the solicitor, while permitted to make recommendations, is not authorized to grant variances. Section 909.1(a)(5) of the MPC provides that the zoning hearing board has exclusive jurisdiction over the granting of variances. 53 P.S. § 10909.1(a)(5).

It is undisputed that the subject property is not in conformance with the zoning ordinance. Nevertheless, testimony presented by DOT permitted the jury to conclude that it would be possible to maintain the gasoline service station as prior, provided that no one complained. *See* R. at 671a. In light of this testimony, the trial court had the responsibility to ensure that the jury understood that continued use of the property as a gasoline service station was not sanctioned by law.

By failing to provide an adequate instruction as to zoning law, the trial court permitted the jury to speculate that Amoco could have continued to operate the gasoline service station and that Amoco, therefore, had no reasonable basis for ceasing to use the property for that purpose. Thus, Amoco received no damages and Weiss received reduced damages, as the jury was permitted to conclude that Weiss's quarrel was with Amoco rather than DOT. Accordingly, we hold that the trial court has committed reversible error.

Condemnees further argue that the trial court erred in failing to provide the jury with condemnees' proposed instructions. A number of the instructions in question relate to zoning law; having resolved this question, we will address only the points for charge pertaining to other subjects.

We agree that the trial court should have instructed the jury that if a partial taking resulted in the entire taking of a leasehold, then Amoco was entitled to compensation for the taking of its leasehold interest. *See Profit–Sharing Blue Stamp Co. v. Urban Redevelopment Authority of Pittsburgh,* 429 Pa. 396, 241 A.2d 116 (1968). This instruction was essential to the jury's complete understanding of the relevant legal principles.

In addition, we agree that the trial court erred in failing to instruct the jury that a corporate condemnee, without further qualification, may testify as to just compensation. *See* 26 P.S. § 1–704. We believe that this statutory right should have been addressed in the instruction, since jurors were informed that they were permitted to consider a witness's bias or employment interest. *See* R. at 847a.

There is no merit to condemnees' argument that the trial court erred in failing to instruct the jury as to the contents of the viewers' report. Section 703(3) of the Code expressly states that the viewers' report and amount of its award are inadmissible in the appeal before the trial court. 26 P.S. § 1–703(3).

Condemnees further argue that the trial court erred in failing to provide the jury with

Amoco's proposed instruction regarding its options to renew its lease. However, this matter was sufficiently covered in the instruction.[11]

Finally, we disagree that the trial court erred in failing to instruct the jury on the determination of fair market value as set forth in section 705(2)(iii) of the Code, 26 P.S. § 1–705(2)(iii). Given that the judge has broad latitude in the choice of language for the instruction, we believe that the charge was adequate with respect to this issue. *See* R. at 860a–65a.

Accordingly, the decision of the trial court is reversed.

### ORDER

NOW, this 15th day of July, 1996, the order of the Court of Common Pleas of Allegheny County, dated May 23, 1994, at No. GD 91–11311, is reversed and this case is remanded for a new trial.

Jurisdiction relinquished.

FRIEDMAN, J., joins in part, but concurs in Judge McGINLEY's concurring and dissenting opinion as to the motion in limine issue.

McGINLEY, Judge, concurring and dissenting.

I concur with the majority's conclusion that the order of the trial court should be reversed. Specifically, I agree with the majority's determination that the trial court committed reversible error by admitting testimony regarding the use of the property

after the taking. It is well settled that the courts of Pennsylvania have permitted "a reasonable—and sometimes major—expansion of a non-conforming use to accommodate growth of the business." Ryan, Pennsylvania Zoning Law and Practice, § 7.4.1. Where, as in the present matter, a building is non-conforming as to area, size or yard requirements[1] rather than the use, our courts have not allowed expansion under this "natural growth" doctrine. *Fagan v. Zoning Board of Adjustment*, 389 Pa. 99, 132 A.2d 279 (1957). In *Jenkintown Towing Service v. Zoning Hearing Board of Upper Moreland Township*, 67 Pa.Cmwlth. 183, 446 A.2d 716 (1982) we noted that even where a proposed expansion is not in conflict with the use classification, a variance is still necessary if the expansion violates the dimensional restrictions of the zoning ordinance. Further, Section 305.01 of the Ordinance provides: "[n]o non-conforming structure shall be moved, extended, enlarged, or structurally altered, except when authorized by the Board...." By virtue of the fact that DOT's taking decreased the size of the property, Amoco's dimensional non-conformity was enlarged and the continued use of the property as a gasoline service station required a variance.

In *Bachman v. Zoning Hearing Board of Bern Township*, 508 Pa. 180, 494 A.2d 1102 (1985) our Supreme Court noted that a conveyance in lieu of condemnation extinguished the prior legal non-conforming use where continuing the use required qualification under the zoning laws. Because I believe Amoco is required to obtain a variance to continue to operate the service station on the remaining property I believe the taking extinguished Amoco's legal non-conforming use

---

11. In the charge, the judge explained: (1) that Amoco contended that it would have remained on the property but for the taking; (2) that Amoco had upgraded the station a few years before the taking; and (3) that Amoco had negotiated two additional five-year terms on its lease, which changed the expiration date of the lease from 1995 to 2000. R. at 850a–51a.

1. Section 709 of the Ordinance provides:
   709 *Automobile and Gasoline Service Stations:* Automobile and gasoline service stations

shall be permitted as a conditional use in the B–2 Business District subject to the following minimum conditions:
709.01 Minimum area of lot shall not be less than 1,800 square feet (167.22 sq. m) and lot width shall be not less than 100 feet (30.48 m) on any street providing access thereto.
709.02 No structure or gasoline pumps shall be placed closer than 20 feet (6.10 m) to the curb line of any street.

of the subject property. Accordingly, I believe that the record does not support the admission of testimony concerning a legal non-conformity, a variance or a vested right and I concur with the majority's conclusion that the trial court committed reversible error by admitting such testimony.

I also concur with the majority's determination that the trial court erred on its jury instructions. Specifically, based upon the above reasoning, I believe the trial court committed reversible error by holding that no law precluded Amoco from continuing its legal non-conforming use.

In regard to the motion in limine filed by Amoco, I disagree with the majority's conclusion that the trial court did not err in denying Amoco's motion to limit testimony at trial to the issue of damages. I therefore dissent to this portion of the majority's opinion. On July 19, 1993, this Court issued an order holding that Amoco had a right to condemnation damages. Because none of the parties appealed this decision the parties, as well as the trial court and the jury, were bound by the findings of the Board of Viewers which supported this Court's conclusion that Amoco was entitled to condemnation damages. Thus, the only issue left to be litigated was the amount of damages. Accordingly, I believe that the trial court erred in denying Amoco's motion in limine to limit the testimony at trial to the issue of damages.

In addition, I respectfully dissent to the portion of the majority's opinion which concludes that the judge's failure to attend the evidentiary view of the subject property constitutes reversible error. While I agree that the General Assembly's use of the word "shall" excludes voluntary or optional conduct, I do not agree with the majority's conclusion that the use of this term means that the judge's failure to attend automatically amounts to reversible error. My review has failed to uncover any case law in Pennsylvania which supports this conclusion. I believe there are instances when the judge's failure to observe the property in person may amount to reversible error but I do not agree with the majority's determination that such is the case here.

Condemnees fail to assert what prejudice occurred as a result of the judge's failure to accompany the jurors to the property. In jury trials, where the judge does not have the authority to substitute his evaluation of the evidence for that of the jury, I do not believe that the parties are automatically prejudiced by the judge's failure to attend the view. Here, because there were numerous pictures of the property introduced into evidence and reviewed by the judge I am hard pressed to find, as the majority does, that the charge was inadequate and the shortfall was attributable to the judge's failure to personally observe the property.

I would conclude that the judge's failure to attend the view of the property constituted harmless error. However, I would also conclude that the trial court committed reversible error by denying Amoco's motion in limine, by admitting testimony regarding the use of the property after the taking and in its jury instructions. Accordingly, I would reverse the order of the trial court and remand the matter for a new trial.

PELLEGRINI, Judge, concurring and dissenting.

While I concur with the majority on other issues, I respectfully dissent from the portion of the majority's opinion holding that the trial court committed reversible error by permitting testimony as to the continued use of the non-condemned portion of the subject property.

Alice Weiss, the owner of property located in the Borough of Emsworth (Borough), leased it to Amoco Oil Company for use as a gasoline station. Under the Borough's Zoning Ordinance, the property is within a B-2 Business District, which permits gasoline stations. However, the Zoning Ordinance, *inter alia*, requires a lot width of no less than 100 feet from any street providing access to the lot, and that gasoline pumps had to be located at least 20 feet from the curb line. The

property as used was non-conforming because it varied from those provisions in that the location of the pumps was less than 20 feet from the curb line and the width of the lot was 97 feet, four inches. The Pennsylvania Department of Transportation (PennDOT) condemned 512½ square feet for road improvements, but that did not include either the building or gasoline pumps. While Amoco's sub-tenant who operated the station testified that the taking, because of the road improvements, made the station more accessible to the public, it increased the non-conformity by increasing the insufficient frontage from the road, changing the lot dimensions.

Amoco claimed before the trial court that PennDOT's take made the station illegal under the Borough Zoning Ordinance because of the increased non-conformity and they could no longer operate it.[1] The trial court allowed testimony of the Borough's Solicitor who testified that Amoco could continue to operate the station but would have to obtain a variance. A real estate appraiser for Penn-DOT also testified that the property could continued to be used as a gasoline station because he was not aware of any case that "a property [was] shut down because its use was affected by condemnation." After a hearing before the jury, as to Amoco, it awarded damages of $38,000.00.

On appeal, Amoco, as it did in its post-trial motions before the trial court, contends that the amount is inadequate because of the testimony of the Borough Solicitor and the Real Estate Appraiser that the property could be continued to be used as a gasoline station when it is now illegal under the Zoning Ordinance. The majority, in reversing the trial court, finds that by making that lot substandard, in effect, mandates a total take. I disagree because I believe that whether the property could be continued to be used under the Zoning Ordinance was properly admitted.

Amoco has the burden of showing that as a result of the take, it would not be allowed to operate the station. A bare assertion that the take makes it non-conforming is insufficient. It had the obligation to seek a variance from the Borough's Zoning Board explaining that the non-conformity was created by a taking. Absent a showing that it would be detrimental to the health, welfare and safety, the Board would be required to grant the variance. To hold otherwise means if a zoning ordinance required a minimum 5,000 square feet for each residential zoning lot, and PennDOT took 10 square feet for road improvement, making the lot area deficient by that amount, and, as the majority holds, makes the lot illegal, then PennDOT would be required to totally take the house on the lot. Because Amoco failed to apply for a variance, I believe the testimony used on that basis was proper and I would affirm that portion of the trial court's opinion.

DOYLE, J., joins in this concurring and dissenting opinion.

---

Where a partial taking interferes with suitable access to property rendering it unsuitable for its present use or its highest or best use, this may be considered in determining fair market value. *In Re Condemnation by the Commonwealth, Department of Transportation,* 93 Pa.Cmwlth. 403, 501 A.2d 1172 (1985).

---

1. The measure of damages in condemnation cases has been the difference between the fair market value of the land before the taking and the fair market value of the land after the taking, as affected by the taking, and considering all the uses to which the land might reasonably be put. Section 602(a) of the Eminent Domain Code.