In re the CONDEMNATION by the County of Allegheny, OF a CERTAIN PARCEL OF LAND, IN the TOWNSHIP OF ROBINSON, ALLEGHENY COUNTY, *now or formerly of Russell M. Keith and Susan L. Keith (Husband and Wife) for the construction of The Settler's Cabin Interchange*

Appeal of Russell M. Keith and Susan L. Keith, Husband & Wife.

Commonwealth Court of Pennsylvania.

Argued May 3, 2004.
Decided Aug. 23, 2004.
Ordered Published Nov. 10, 2004.

---

BEFORE: McGINLEY, Judge and PELLEGRINI, Judge, and KELLEY, Senior Judge.

OPINION BY Senior Judge KELLEY.

Russell M. Keith and Susan L. Keith (Condemnees) appeal from the order of the Court of Common Pleas of Allegheny County (trial court) overruling their preliminary objections to the Declaration of Taking filed by the County of Allegheny (Condemnor) pursuant to the provisions of the Pennsylvania Eminent Domain Code.[1] We affirm.

In 1962, Condemnees acquired a 22,051 square foot parcel of property located in Robinson Township, Allegheny County. The property lies between Campbell's Run Road and State Route 22. Condemnees obtained the proper building permits and constructed two structures on the property as part of a light industrial, equipment manufacturing complex.

In 1993, the Township enacted a Zoning Ordinance which designated the area in which the subject parcel is located as a C–4 Commercial Zoning District. Although the use of the property was a permitted use, the structures located on the property did not meet the setback requirements of the new Zoning Ordinance. Specifically, Section 1403A(6)(A) of the Township's Zoning Ordinance provides that no structure shall be located within fifty (50) feet of any property line or public right-of-way.

However, Part 25A of the Zoning Ordinance recognizes nonconforming lots, structures or uses that existed prior to its adoption.[2] Thus, because the structures on Condemnees property did not conform

Gregory A. Biernacki, Pittsburgh, for appellants.

Howard M. Louik, Pittsburgh, for appellee.

1. Act of June 22, 1964, Special Sess., P.L. 84, *as amended,* 26 P.S. §§ 1–101—1–903.

2. Specifically, Section 2503A of the Zoning Ordinance provides, in pertinent part:

1. When a structure exists on a lot at the effective date of this Chapter, or any amendments thereto, and does not conform to the requirements regarding height, setbacks, yards or lot coverage, said structures may remain subject to the following:

A. No such structure may be enlarged or structurally altered in a way that would

to the setback requirements of the Zoning Ordinance, they were recognized as non-conforming structures pursuant to the foregoing provisions.

On September 16, 2002, the Allegheny County Chief Executive approved Ordinance 46–02 enacted by the Allegheny County Council. Ordinance 46–02 authorized Condemnor to acquire land by condemnation for the construction of the Settler's Cabin Interchange on State Route 22 at Campbell's Run Road and Ridge Road in the Township. As a result, on December 11, 2002, Condemnor filed the instant Declaration of Taking acquiring in fee simple a right-of-way at the rear of Condemnee's parcel totaling approximately 1,856 square feet.[3]

On January 17, 2003, pursuant to Section 406 of the Eminent Domain Code[4], Condemnees filed preliminary objections to the Declaration of Taking in which they alleged, *inter alia:*

> 5. The area described in the Declaration of Taking for the construction and operation of a highway interchange known as the Settlers Cabin Interchange, will be approximately 45 feet from the main building on the Condemnees' lot, and less than 25 feet from other existing structures on the property in which Condemnees conduct business.
>
> 6. The new construction of the Settlers Cabin Interchange will put the Condemnees' property in violation of [Section 1403A(6)(A) of the Township's Zoning Ordinance].
>
> 7. The Condemnor's description [of the] land taken in the Viewers' Plan . . . is in error, such that the Condemnor purports to take 1,856.08 square feet of land, when the Condemnor has actually taken the property completely, under the holding of *Amoco Oil Company v. [Department of Transportation,* 679 A.2d 1369 (Pa.Cmwlth.1996), *petition for allowance of appeal denied,* 547 Pa. 758, 692 A.2d 567 (1997) ].[5]

\* \* \*

> increase its nonconformity, except through a variance granted by the Zoning Hearing Board which may authorize reasonable modifications . . .

3. Specifically, Condemnee acquired 1,520.88 square feet for a right-of-way, and 335.20 square feet for a drainage easement.

4. Section 406 of the Eminent Domain Code provides, in pertinent part:

> (a) Within thirty days after being served with notice of condemnation, the condemnee may file preliminary objections to the declaration of taking. . . . Preliminary objections shall be limited to and shall be the exclusive method of challenging (1) the power or right of the condemnor to appropriate the condemned property unless the same has been previously adjudicated; (2) the sufficiency of the security; (3) any other procedure followed by the condemnor; or (4) the declaration of taking. Failure to raise these matters by preliminary objections shall constitute a waiver thereof.

26 P.S. § 1–406(a).

5. In *Amoco Oil Company,* Amoco was the lessee of property which was located at the intersection of Ohio River Boulevard and Camp Horne Road in Allegheny County and was used as a gasoline service station. The relevant zoning ordinance permitted such a use as a conditional use, but required a lot width of no less than 100 feet on any street providing access to the lot, and that gasoline pumps be located at least 20 feet away from the curb line of any street. The width of the subject lot on one side was 97 feet, 4 inches, and the pumps were less than 20 feet from the curb line. However, because these conditions predated the zoning ordinance, the lot was in legal nonconformance with these requirements. Subsequently, Condemnor filed a declaration of taking condemning 512½ feet of the subject lot, rounding off the corner of the intersection. Amoco ceased its operation of the service station subsequent to the taking.

Pursuant to Section 502 of the Eminent Domain Code, both Amoco and the landowner filed petitions for the appointment of a

11. [Condemnor]'s design of the Settlers Cabin Interchange construction project creates an excessive taking of Condemnee's property in the following respects:

a) It appropriated a greater amount of property than is reasonably required for the contemplated purposes of the interchange construction. . . .

board of viewers to recover damages incurred by the taking, and a hearing before the Allegheny County Board of Viewers ensued. The Board concluded, *inter alia*, that the taking altered the property in such a manner that it was no longer in compliance with the relevant zoning ordinance and, as a result, destroyed Amoco's lease and prohibited further use of the property as a service station. Accordingly, the Board awarded damages to both Amoco and the landowner.

Condemnor, Amoco and the landowner each appealed the Board's award to the trial court, and a trial before a jury regarding the damages to be awarded ensued. During the trial, with respect to valuation, Amoco argued, *inter alia*, that its legal nonconforming use of the lot was extinguished as the taking resulted in dimensional changes to the lot. As a result, Amoco asserted that it could not continue to operate a service station on the lot without violating the zoning requirements and that it should be compensated therefor. With respect to the extent of the taking, the trial court permitted Condemnor to present the testimony of witnesses that the lot could continue to be used as a service station in spite of the zoning requirements. Ultimately, following the trial, the jury awarded damages to the landowner but did not award damages to Amoco. Both Amoco and the landowner appealed the matter to this Court.

In its appeal, Amoco alleged, *inter alia*, that the trial court erred in permitting Condemnor to present testimony regarding the continued illegal use of the property as a service station. We initially noted that Amoco's nonconforming use had been extinguished by the taking, that its chances of obtaining a variance to continue the service station use were minimal, and that it would not succeed in establishing a vested right to continue this use. *Amoco Oil Company*, 679 A.2d at 1376–1377.

12. [Condemnor], in bad faith, has exercised eminent domain authority in derogation of the rights of the [Condemnees], private citizens, to hold property in the following manner:

\* \* \*

b) It acquired excess property not needed for the construction of the new Settlers Cabin Interchange. . . .

In disposing of Amoco's allegation of error, we stated the following, in pertinent part:

To determine whether the testimony in question was improperly admitted, we find *Snyder v. Commonwealth*, 412 Pa. 15, 192 A.2d 650 (1963) to be instructive. In *Snyder*, the Supreme Court considered the propriety of evidence of property value based on a property use that was not permitted by the zoning ordinance at the time of trial. In its analysis, the Supreme Court noted the general rule and its exception. The Supreme Court stated:

The general rule is that evidence of increased value is inadmissible where the increase would result from a use proscribed by zoning regulations. 4 Nichols on Eminent Domain § 12.322 (Rev. 3d ed. 1962). . . .

*Id.* at 18–19, 192 A.2d at 652. . . .

In light of *Snyder* and its progeny, we conclude that the trial court erred in permitting testimony as to a property use prohibited by the zoning ordinance. Because there are neither allegations nor evidence that a change in applicable zoning regulations is imminent, there is no basis for considering the applicability of an exception to the general rule. . . .

Further, the trial court's error was harmful to condemnees. The improperly admitted testimony permitted the jury to conclude that the subject property could have remained in use as a service station after the taking and that Amoco's lease, therefore, had not been destroyed.

*Id.* at 1377–1378. As a result, we concluded that reversible error had occurred in this regard. *Id.* at 1378. Ultimately, the case was remanded for a new trial on the damages to be awarded for the taking based on this error and others that had occurred in the initial trial. *See Id.* at 1380.

\* \* \*

14. The Declaration of Taking as filed does not properly describe the "larger parcel" taken in that it only describes a small portion of the entire parcel. . . .

Preliminary Objections to the Declaration of Taking at 2–3.

■ On August 4, 2003, the trial court issued an order and opinion disposing of Condemnees' preliminary objections in which it stated the following, in pertinent part:

It appears that *Amoco Oil Co.* is a case of first impression in Pennsylvania. A literal reading of this case compels the result that every taking that decreases the size of a property that was legally non-conforming will result in a finding that the dimensional non-conformity was enlarged followed by an automatic extinguishment of the non-conforming use. This will require . . . that for every slight taking of a dimensionally non-conforming property, that the condemnor must automatically acquire the entire property, regardless of cost, and that whichever municipality was affected, would lose the benefit of whatever economic activity occurred on the property.

*Amoco Oil Co.* is distinguishable from the instant case in that [in *Amoco Oil Co.,*] the gasoline service station went out of business after the taking placed the station's gasoline pumps closer to the roadway than they previously were under the legal non-conforming use. In the instant case, the property is still being used as before. For the above reasons, the Preliminary Objections are premature and are overruled.

Trial Court Opinion at 3–4. Based on the foregoing, the trial court issued an order overruling Condemnees' preliminary objections. *Id.* at 5. Condemnees then filed the instant appeal in this Court.[6]

In this appeal, Condemnees claim: (1) the trial court erred in overruling their preliminary objections to the Declaration of Taking; and (2) the trial court erred in shifting the burden of proof to Condemnees to seek a variance to the Township's Zoning Ordinance rather than requiring Condemnor to pay full compensation for extinguishing the valid nonconforming use.

■ Condemnees first claim that the trial court erred in overruling their preliminary objections to the Declaration of Taking. Specifically, Condemnees allege that the trial court erred in: (1) failing to determine that their lawful nonconforming use was extinguished by the condemnation; (2) failing to determine that Condemnor effectuated a *de facto* taking of the structures on the property; and (3) failing to determine that this *de facto* taking of the structures constituted an abuse of discretion and an excessive taking. We do not agree.

In *Milas Appeal*, 36 Pa.Cmwlth. 1, 387 A.2d 183 (1978), a municipal authority filed a declaration of taking for a right-of-way or easement 30 feet in width during construction, and 20 feet in width thereafter, to lay, maintain, operate and remove a single line of sewer pipe across the landowner' property. Pursuant to Section 406 of the Eminent Domain Code, the landowners' filed preliminary objections to the declaration of taking in which they alleged,

---

**6.** In eminent domain proceedings, where a trial court has either sustained or overruled preliminary objections to a declaration of taking, this Court's scope of review is limited to determining whether the trial court abused its discretion or committed an error of law. *In re Condemnation by the City of Coatesville of Certain Properties and Property Interests for Use as a Public Golf Course,* 822 A.2d 846 (Pa.Cmwlth.2003).

in pertinent part, that "[landowners] object to the declaration of taking as to the nature of the title acquired and the description of the property condemned as the same is not averred but in fact is the entire interest of the [landowners]." *Milas Appeal*, 387 A.2d at 184.

Thus, as in the instant appeal, the landowners in *Milas Appeal* alleged that the partial *de jure* condemnation resulted in a larger *de facto* taking of their property. As a result, as in the instant appeal, the landowners in *Milas Appeal* preliminarily objected to the declaration of taking on the basis that the nature of the title taken and the description of the property as stated therein failed to include the larger property appropriated by the *de facto* taking.

Ultimately, in *Milas Appeal*, the trial court dismissed the landowners' preliminary objections without a hearing, and they appealed the trial court's order to this Court. *Id.* On appeal, the landowners alleged, *inter alia*, that the trial court had erred in dismissing this preliminary objection. In disposing of this allegation of error, this Court stated the following, in pertinent part:

> The [landowners]' second preliminary objection is directed to the nature of the title acquired and the description of the property condemned as set forth in the declaration of taking. It alleges that the effect of the Authority's action is to take their entire property by rendering it valueless. That this is the intendment of the objection is made clear by the [landowners'] brief, the closing paragraph of which is as follows:
>
> > ["U]nder the guise of condemning an easement the condemnor has totally ruined their property, is basing its estimation of just compensation on only a part of the property, and will present its case to a board of viewers in the unjustified context of a partial

taking case. This Court should not allow such a submersion of the Legislative intent to reform condemnation procedure." . . .

> Thus, the [landowners] are seeking a judicial determination of the value of their property after condemnation of the easement for the sewer line. This is not a judicial function. The [landowners] are entitled to the difference between the fair market value of their property before and after condemnation, both values to be fixed by a jury of view or a traverse jury on appeal; they are not entitled to a judicial declaration that their property has no value after the take.

> This is not a case, as is urged by the [landowners], of a preliminary objection raising a de facto taking; the [landowners] have failed to describe anything done with respect to their property by the condemnor other than that it has condemned an easement which has destroyed the property's value. A de jure condemnation cannot be converted to a de facto condemnation by an averment in a preliminary objection to a declaration of taking that the effect of the de jure condemnation is to render the property valueless. The dismissal of this preliminary objection by the court below without an evidentiary hearing was therefore proper and is affirmed.

*Id.*

Likewise, in the instant case, Condemnees have failed to describe anything done to their property **by Condemnor** other than acquiring in fee simple rights-of-way across Condemnees' parcel totaling approximately 1,856 square feet. That fact that this condemnation may ultimately impact upon the use or value of the buildings on the parcel is not properly raised in preliminary objections to the instant Declaration of Taking under Section 406 of the

Eminent Domain Code. *See id. See also In re Condemnation of Right of Way for State Route 79, Section W10*, 568 Pa. 546, 558, 798 A.2d 725, 732 (2002) ("Accordingly, we hold that Appellee's claim, which related to the value of his remaining property as affected by the taking, was not required to be, nor could it have been, raised by preliminary objections [to the declaration of taking] under Section 406(a).").

Rather, such a claim relating to the use or value of the buildings is properly raised in a petition for the appointment of a board of viewers, filed pursuant to Section 502 of the Eminent Domain Code.[7] In such a petition, Condemnees may seek compensation for the loss in use or value of their buildings which will purportedly flow from the destruction of their prior legal nonconformity. In fact, the case relied upon by Condemnees both before the trial court and this Court, *Amoco Oil Company*, was a proceeding under Section 502 to fix the total compensation due, in part, from the purported destruction of the prior legal

nonconformity of the property. *See Amoco Oil Company*, 679 A.2d at 1371 ("[I]n accordance with section 502(a) of the Code, Amoco filed a petition for the appointment of viewers, which was granted by the trial court. By order of the trial court, [the landowner] was permitted to intervene. Both Amoco and [the landowner] sought damages for the taking.") (footnotes omitted).[8]

Thus, the issue of whether Condemnees may suffer a loss of use or value of the buildings by the extinguishment of their prior legal nonconformity is properly addressed in a proceeding for damages under Section 502, and not in preliminary objections to the instant Declaration of Taking under Section 406. In short, the trial court did not err in overruling the instant preliminary objections, and Condemnees' allegation of error in this regard is without merit.

■ Finally, relying upon *Amoco Oil Company*, Condemnees claim that the trial court erred in shifting the burden of proof to Condemnees to seek a variance to the

---

**7.** Section 502 of the Eminent Domain Code provides, in pertinent part:

(a) The condemnee may file a petition requesting the appointment of viewers, setting forth:

\* \* \*

(5) A brief description of his property which may include any or all of his properties in the same county taken, injured or destroyed for the same purpose by the condemnor, whether by the same or separate declarations or without a declaration of taking.

(6) A request for the appointment of viewers to ascertain just compensation.

\* \* \*

(d) The court appointing the viewers may, on its own motion or at the request of a party, direct them to determine the damages for any or all of the properties included in the declaration of taking or any or all properties taken, injured or destroyed for the same purpose by a condemnor without a declaration of taking.

(e) If there has been a compensable injury suffered and no declaration of taking therefore has been filed, a condemnee may file a petition for the appointment of viewers substantially in the form provided for in subsection (a) of this section, setting forth such injury.

26 P.S. § 1–502(a)(5), (6), (d), (e).

**8.** *See also In re Condemnation of Outdoor Advertising Device in an Area Adjacent to Legislative Route 68*, 98 Pa.Cmwlth. 527, 512 A.2d 79 (1986), *petitions for allowance of appeal denied*, 513 Pa. 636, 520 A.2d 1386 (1987) (A lessee who owned four outdoor advertising signs on a leased tract of land was not precluded from filing a petition for the appointment of viewers under Section 502 of the Eminent Domain Code, alleging a *de facto* taking of three signs removed by the lessee at the prodding of the condemnor, by the condemnor's filing of a formal declaration of taking with respect to the fourth sign.).

Township's Zoning Ordinance, rather than requiring Condemnor to pay full compensation for extinguishing the prior legal nonconformity of the buildings. Again, however, such issues relate to the damages which may be awarded under Section 502 of the Eminent Domain Code, and are not properly raised or addressed in preliminary objections to a declaration of taking under Section 406. *In re Condemnation of Right of Way for State Route 79, Section W10; Amoco Oil Company; Milas Appeal.* As a result, in the instant proceedings on Condemnees' preliminary objections to the Declaration of Taking, any purported error by the trial court in this regard was irrelevant and harmless.

Accordingly, the order of the trial court is affirmed.

### ORDER

AND NOW, this 23rd day of August, 2004, the order of the Court of Common Pleas of Allegheny County, dated August 4, 2003 at No. G.D. 02–02–23588, is AFFIRMED.

Jurisdiction is RELINQUISHED.