# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| 2800 N. Broad Street, LLC | : | |
| | : | |
| v. | : | No. 925 C.D. 2020 |
| | : | ARGUED:  June 7, 2021 |
| Commonwealth of Pennsylvania, | : | |
| Department of Transportation, | : | |
| Appellant | : | |

BEFORE:   HONORABLE P. KEVIN BROBSON, President Judge
                  HONORABLE J. ANDREW CROMPTON, Judge (P)
                  HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


OPINION BY
SENIOR JUDGE LEADBETTER                              FILED:  July 2, 2021


The Commonwealth of Pennsylvania, Department of Transportation, appeals from an order of the Court of Common Pleas of Philadelphia County overruling the Department's preliminary objections to the petition for appointment of a board of viewers filed by 2800 N. Broad Street, LLC (Condemnee) pursuant to Section 502 of the Eminent Domain Code (Code), 26 Pa.C.S. § 502.  We reverse and remand this matter with directions to the trial court to grant Condemnee's request for appointment of a board of viewers for purposes of ascertaining just compensation for the *de jure* partial taking of Condemnee's properties, and to strike Condemnee's request that the court declare a *de facto* taking.

The relevant background is as follows.  In October 2018, the Department filed a declaration of taking for a partial taking of Condemnee's properties at 3900-18 Richmond Street, Philadelphia, Pennsylvania,[1] as a part of the

---

[1] In the declaration of taking and condemnation plan, the Department refers to the properties as Parcel 71.  Parcel 71 is a consolidation of the properties at issue.

road improvement project for State Route 0095, Section AF3.[2]  (Decl. of Taking, Schedule of Prop. Condemned at 1; Reproduced R. "R.R." at 5a.)  In addition to a temporary construction easement of 1955 square feet, the partial taking included 1104 square feet from a total of 18,264 square feet.  Condemnee did not file preliminary objections to the declaration of taking.

In March 2020, Condemnee filed a petition for appointment of a board of viewers seeking damages for the *de jure* partial taking of its properties under Section 502(a) of the Code and a declaration of a *de facto* taking of the remainder of its properties under Section 502(c).  Specifically, Condemnee contended that the Department's partial *de jure* condemnation effected a *de facto* taking of the entirety of Condemnee's property interest such that the remainder had no economic value after the condemnation.  In support, Condemnee alleged that it had obtained permits, development approvals, and zoning approvals before the declaration of taking to construct fourteen two-family attached dwellings but that the condemnation had rendered development impossible because the entirety of the property was necessary for the planned development.[3]  (Mar. 18, 2020, Pet. for Appt. of a Bd. of Viewers, ¶¶ 8, 12, and 13; R.R. at 13a-14a.)

In preliminary objections, the Department asserted that where there was a declaration of taking, Condemnee erred in asserting a *de facto* taking in the petition for appointment of a board of viewers.  The Department alleged that "[t]he

---

[2] This segment of the project effects a total of 0.187 miles of roadway situated along portions of land adjacent to I-95 and extending along Richmond Street to just beyond the intersection of Wheatsheaf Lane.  The purpose of the partial taking is to improve the access ramps from I-95 to the Betsy Ross Bridge.

[3] Condemnee asserted that the Philadelphia Zoning Code required off-street parking for the proposed units and that the planned vehicular access was to be via a common drive from Wheatsheaf Lane, a cross street to Richmond Street.  (May 11, 2020, Br. of Condemnee in Opp'n to Prelim. Objs. at 3; R.R. at 76a.)

condemnation and filing of a declaration of taking, whether considered a partial or total taking, 'encompasses' the entire parcel for purposes of determining just compensation." (Apr. 20, 2020, Prelim. Objs., ¶ 18; R.R. at 43a.) The Department alleged that only a *de jure* taking occurred and that any damages were part of and the result of the declaration of taking. It also contended that Condemnee failed to allege or to establish any exceptional circumstances that substantially deprived it of the beneficial use and enjoyment of the properties, other than the declaration of taking. In addition, the Department objected to allegations that any of its actions affected the highest and best use of the properties, including the remainder, other than the declaration of taking. The Department also denied that it prevented Condemnee from developing or using the remainder after the declaration of taking. (*Id.*, ¶¶ 41 and 42; R.R. at 46a.) Accordingly, the Department argued for the dismissal of Condemnee's *de facto* taking claims under Section 502(c) of the Code.

Without specifically ruling on the Department's preliminary objections, the trial court granted Condemnee's petition and ordered an appointment of viewers. Following the Department's motion for reconsideration asserting, *inter alia*, that there were factual issues to be determined in an evidentiary hearing,[4] the trial court vacated its order and directed the Department to file an answer to Condemnee's petition within ten days. In the answer, the Department incorporated its preliminary objections, denied the petition's seminal averments, and demanded strict proof of the averments at an evidentiary hearing. Condemnee's answer to the preliminary objections followed. Subsequently, the trial court overruled the preliminary objections and, without holding an evidentiary hearing, concluded that a *de facto* taking had occurred. The Department's appeal to this Court followed.

---

[4] (June 19, 2020, Mot. for Reconsid., ¶¶ 15 and 17; R.R. at 125a-26a.)

3

The issues before us are as follows:[5]  1) whether Condemnee erred in filing a petition seeking damages for the *de jure* partial taking of its properties under Section 502(a) of the Code *and* a declaration of a *de facto* taking of the remainder of its properties under Section 502(c), and thus whether the trial court erred in overruling the Department's preliminary objections as to Section 502(c) of the Code (*de facto* taking); 2) whether the trial court erred in determining that a *de facto* taking occurred without holding an evidentiary hearing;  and 3) whether Condemnee erred in failing to file preliminary objections to the declaration of taking.

# I

As an initial matter, we note that Condemnee properly filed a petition for a board of viewers to assess damages for the *de jure* partial taking of its properties under Section 502(a) of the Code.  However, that part of the petition seeking a declaration of a *de facto* taking of the remainder of its properties under Section 502(c) was erroneous.  Presumably, Condemnee believed that a *de facto* claim was needed to assert that the property not included in the declaration of taking had been rendered valueless.  This is incorrect.  Where there is a declaration of taking filed for a *de jure* partial taking, damages are determined by considering *both* the value of the property actually acquired and the damages to the remaining property.  In other words, the *de jure* partial taking of the properties already contemplates damages to the remainder of the property.  Condemnee appears to conflate the concept of a *de facto* taking with the circumstance in which a government action has rendered one's property valueless.  This is a misconception.  Just as a *de jure* taking of a portion of property may (or may not) diminish the value of the remaining portion or render it entirely valueless, a *de facto* taking may render the property valueless or

---

[5] We have restated and reordered the issues for accuracy and clarity.

4

may simply diminish its value. The difference lies not in the extent of lost value but in the manner in which the value was lost, *i.e.*, by a declaration of taking or by some other action by an entity which has the power of eminent domain.

Two Code provisions are relevant: the measure of damages provision found in Section 702 and the "Effect of condemnation use on after value" provision found in Section 706. 26 Pa.C.S. §§ 702 and 706. Section 702(a) provides that "[j]ust compensation shall consist of the difference between the fair market value of the condemnee's *entire property interest* immediately before the condemnation and as unaffected by the condemnation and the fair market value of the property interest remaining immediately after the condemnation and as affected by the condemnation." 26 Pa.C.S. § 702(a) (emphasis added). The effect of Section 702(a) is that the scope of the property interest to be valued is the entire property interest, not just the portion set forth in the declaration of taking. In other words, the "before" and "after" values of the entire property must be taken into consideration. *Scranton Penn Furniture Co. v. City of Scranton*, 498 A.2d 469 (Pa. Cmwlth. 1985).

The second Code provision, Section 706(a), sets forth the general rule for "determining the fair market value of the remaining property after a partial taking," stating: "[C]onsideration shall be given to the use to which the property condemned is to be put and the damages or benefits specially affecting the remaining property due to its proximity to the improvement for which the property was taken." 26 Pa.C.S. § 706(a). *See Middletown Twp., Del. Cnty. Sewer Auth. v. Baker*, 522 A.2d 1182, 1184 (Pa. Cmwlth. 1987) (expert in determining "after" value may consider the cost of alterations or adjustments to remaining property reasonably required by the condemnation as this affects the fair market value of the remainder).

5

Moreover, the statutory scheme regarding petitions for appointment of a board of viewers makes it clear that the trial court erred in overruling the Department's preliminary objections to the portion of Condemnee's petition under Section 502(c) of the Code (*de facto* taking). Section 502 of the Code clearly delineates distinct procedures for requesting a board of viewers depending on whether a declaration of taking has been filed. Specifically, Section 502(a) provides:

> **(a) Contents of petition.--**A condemnor, condemnee or displaced person may file a petition requesting the appointment of viewers, setting forth:
>
> (1) A caption designating the condemnee or displaced person as the plaintiff and the condemnor as the defendant.
>
> (2) *The date of the filing of the declaration of taking* and whether any preliminary objections have been filed and remain undisposed of.
>
> . . . .
>
> (6) A request for the appointment of viewers to ascertain just compensation.

26 Pa.C.S. § 502(a) (emphasis added). Thereafter, Subsection (c) provides:

> **(c) Condemnation where no declaration of taking has been filed.--**
>
> (1) An owner of a property interest who asserts that the owner's property interest has been condemned *without the filing of a declaration of taking* may file a petition for the appointment of viewers substantially in the form provided for in subsection (a) setting forth the factual basis of the petition.

26 Pa.C.S. § 502(c) (emphasis added). Because Subsection (c) applies only where a declaration of taking has not been filed, Condemnee's request for a declaration of

*de facto* taking thereunder was improper and thus, the Department's preliminary objections should have been sustained.

The scope of preliminary objections for a *de facto* taking and for a *de jure* taking is the same. *Jacobs v. Nether Providence Twp.*, 297 A.2d 550, 552 (Pa. Cmwlth. 1972). "[P]reliminary objections under the Code are intended as a procedure to resolve expeditiously all legal and factual challenges to the declaration of taking before the parties move to the second distinct proceeding of qualifying damages." *W. Whiteland Assocs. v. Dep't of Transp.*, 690 A.2d 1266, 1268 (Pa. Cmwlth. 1997). The trial court should have sustained the preliminary objections to the *de facto* taking claim thereby resolving that legal challenge before the matter was ready to proceed to a board of viewers. In light of this determination, the remaining issues raised by the Department are moot. However, we address them briefly to clarify the procedural principles which appear to have been misunderstood by both the parties and the trial court.

## II

We agree with the Department that the trial court misconstrued the evidentiary hearing requirement with respect to *de facto* takings. With respect to *de facto* takings, Section 504(d)(5) of the Code provides: "If an issue of fact is raised, the court shall conduct an evidentiary hearing or order that evidence be taken by deposition or otherwise, but in no event shall evidence be taken by the viewers on this issue." 26 Pa.C.S. § 504(d)(5). Additionally, this Court has held that where preliminary objections raise an issue of fact as to whether a *de facto* taking has occurred, the trial court must take evidence, even if the parties have not requested

7

an evidentiary hearing. *Hill v. City of Bethlehem*, 909 A.2d 439, 443 (Pa. Cmwlth. 2006).[6]

## III

We turn now to the Department's argument that Condemnee waived its claim to allege a *de facto* taking when it failed to file preliminary objections to the declaration of taking challenging the nature and extent of the condemnation. We disagree. Such a claim was not required to be, nor should it have been, raised by preliminary objection. *In re Condem. by Dep't of Transp., of Right of Way for State Route 79, Section W10, a Ltd. Access Highway, in the Twp. of Cecil*, 798 A.2d 725, 732 (Pa. 2002) ("*Sluciak*").

In *In re Condemnation by County of Allegheny* ("*Appeal of Keith*"), 861 A.2d 387, 392 (Pa Cmwlth. 2004), we rejected as improper the owners' procedural decision to file preliminary objections to a declaration of taking alleging that a partial *de jure* condemnation resulted in a larger *de facto* taking of their property. The Court held that raising the issue of a *de facto* taking in that manner was improper because the owners were seeking a judicial determination of the value of their property after condemnation, which is not a judicial function. Instead, the owners "are entitled to the difference between the fair market value of their property before and after the condemnation, both values to be fixed by a jury of view or traverse jury on appeal; they are not entitled to a judicial determination that their property has no value after the take." *Id*. [citing *In re N. Huntingdon by N. Huntingdon Twp. Mun. Auth. for Sewerage Purposes* ("*Appeal of Milas*"), 387 A.2d 183, 183-84 (Pa. Cmwlth. 1978)]. In other words, "[a] *de jure* condemnation [for a partial acquisition] cannot be

---

[6] Where there has been a declaration of taking, the case can go directly to a board of viewers to determine the amount of damages. However, where no declaration has been filed, the trial court must first determine that a taking has occurred before the board of viewers can determine damages.

converted to a *de facto* condemnation by an averment in a preliminary objection to a declaration of taking that the effect of the *de jure* condemnation was to render the property valueless." *Appeal of Keith*, 861 A.2d at 392.

## IV

Accordingly, we reverse the trial court's order and remand this matter to the trial court with directions to strike Condemnee's request that the court declare a *de facto* taking and to grant Condemnee's request for appointment of a board of viewers for the purpose of assessing damages for the effect of the *de jure* partial taking on the entirety of Condemnee's properties.

_____
**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

2800 N. Broad Street, LLC      :
         :
       v.          :    No. 925 C.D. 2020
         :
Commonwealth of Pennsylvania,      :
Department of Transportation,      :
         Appellant     :

# O R D E R

AND NOW, this 2nd day of July, 2021, the order of the Court of Common Pleas of Philadelphia County is hereby REVERSED. This matter is REMANDED with directions to the trial court to grant Condemnee's request for appointment of a board of viewers for purposes of ascertaining just compensation for the *de jure* partial taking of Condemnee's properties, and to strike Condemnee's request that the court declare a *de facto* taking.

Jurisdiction relinquished.

_____
**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita